845 F.2d 1463
 FREEDOM FROM RELIGION FOUNDATION, INC., a Wisconsin Nonstock
Corporation, Phyllis Grams, Annie Laurie Gaylor,
and Anne Nicol Gaylor, Plaintiffs- Appellants,
v.
Patrick ZIELKE, individually and as Mayor of the City of La
Crosse, Wisconsin, Common Council of La Crosse,
Wisconsin, and City of La Crosse,
Wisconsin, Defendants-Appellees.
 No. 87-2160.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 9, 1987.
Decided May 10, 1988.
 
 Richard B. Jacobson, Borns, MacAulay & Jacobson, Madison, Wis., for plaintiffs-appellants.
 G. Jeffrey George, Steele, Klos & Flynn Chtd., LaCrosse, Wis., for defendants-appellees.
 Before CUMMINGS and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*
 FLAUM, Circuit Judge.
 
 
 1
 Phyllis Grams, Annie Laurie Gaylor, Anne Nicol Gaylor, and the Freedom from Religion Foundation, Inc. (collectively "the appellants") filed an action in federal court pursuant to 42 U.S.C. Sec. 1983 to enjoin the City of La Crosse from displaying a monument of the Ten Commandments in a city park. The appellants alleged that the display violated their rights under the first and fourteenth amendments to the Constitution to be free from public and governmental support for religion. They also asserted that alleged expenditures of public funds on the monument violated Article I, Sec. 18 of the Wisconsin Constitution. The district court dismissed the appellants' action on the ground that they lacked standing to bring the suit, 663 F.Supp. 606 (1987), and we affirm.
 
 I.
 
 2
 In 1899 the City of La Crosse, Wisconsin purchased a one-acre plot of land for $6,000 and created a public park. The park, called Cameron Park, is located near the La Crosse business district. In 1964 the Fraternal Order of Eagles donated a monument of the Ten Commandments to the city for display in Cameron Park.[1] The La Crosse City Park Commission voted to accept the monument, which was dedicated on June 19, 1965.
 
 
 3
 The monument resembles a tombstone, and contains an English translation of one version of the Ten Commandments. It is about five feet, four inches high, thirty-three inches wide and ten inches deep; the monument is located eight feet from the sidewalk that surrounds the park, and is clearly visible from the sidewalk. At night the monument is lighted from the roof of the Eagles' building across the street from Cameron Park. Aside from a few park benches, the monument is the only man-made structure in the park. Although the City of La Crosse owns and maintains Cameron Park, the city did not buy the monument nor does it expend funds on the monument's maintenance.
 
 
 4
 In 1985 Phyllis Grams, a resident of La Crosse, became aware of the monument when a friend brought it to her attention. Grams then went to see the monument for herself. At trial, Grams testified that she was offended by the display because she viewed it as a message from the city about the religious beliefs that private citizens should hold. Grams was sufficiently offended by the Ten Commandments monument that she complained about it to the Common Council of La Crosse. Appellant Anne Nicol Gaylor, President of the Freedom From Religion Foundation, also wrote a letter to the Common Council complaining about the monument. After receiving these complaints, the Common Council held a public hearing on the question of the monument's presence in Cameron Park. Following the hearing, the Common Council decided not to take any action on the monument.
 
 
 5
 As a result, the appellants filed an action in district court pursuant to 42 U.S.C. Sec. 1983 to enjoin the appellees from continuing to display the monument in Cameron Park. The appellants contended that the continued display of a monument of the Ten Commandments in a city-owned park was a governmental endorsement and establishment of religion which violated the first and fourteenth amendments to the United States Constitution. Additionally, the appellants asked the district court to exercise pendent jurisdiction over their claim that the city's expenditure of funds on the monument violated Article I, Sec. 18 of the Wisconsin Constitution.
 
 
 6
 Following a bench trial, the district court concluded that the appellants failed to meet the "case or controversy" requirement of Article III of the Constitution. The district court therefore dismissed the action because the appellants lacked standing to contest the constitutionality of the monument's presence in Cameron Park.
 
 
 7
 On appeal the individual appellants argue that they have standing because they have been injured by the existence of the monument.[2] They also contend that the Freedom From Religion Foundation has organizational standing as a representative of its members, several of whom were allegedly injured by the city's display of the monument in Cameron Park. Finally, the appellants assert that Phyllis Grams has standing to challenge the constitutionality of the display because she is a taxpayer of the City of La Crosse and the city has allegedly used tax money to support the display.
 
 
 8
 In contrast, the appellees argue that the appellants do not have standing to challenge the constitutionality of the monument because none of the appellants has demonstrated a distinct and palpable injury resulting from the defendants' allegedly unconstitutional activity. Further, the appellees assert that Phyllis Grams does not have standing to bring this action as a taxpayer of the City of La Crosse because she failed to allege or prove that she is actually a La Crosse taxpayer. Finally, the appellees claim that even if Grams is a taxpayer, she cannot have standing on that ground because she did not establish that the City of La Crosse has ever used tax funds on the monument.II.
 
 A.
 
 9
 The sole issue on appeal is whether the appellants have standing to challenge the constitutionality of the monument of the Ten Commandments on display in Cameron Park. An analysis of a litigant's standing to bring an action in federal court focuses not on the claim itself, but on the party who is bringing the challenge. Foster v. Center Township of LaPorte County, 798 F.2d 237, 241 (7th Cir.1986). Standing is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action. Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). See also Bender v. Williamsport Area School Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986) (because it affects jurisdiction, courts are obligated to consider the question of standing even if the parties do not raise it).
 
 
 10
 Standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." Warth, 422 U.S. at 498, 95 S.Ct. at 2205. The constitutional limitations of the standing requirement stem from Article III of the Constitution which limits the jurisdiction of the federal courts to the resolution of cases or controversies. U.S. Const. art. III. See Bender, 475 U.S. at 541, 106 S.Ct. at 1331 ("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.") (citing Marbury v. Madison, 1 Cranch 137, 173-80, 2 L.Ed. 60 (1803)). For a party to have standing, at a minimum Article III
 
 
 11
 requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 [99 S.Ct. 1601, 1608, 60 L.Ed.2d 66] (1979), and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 38, 41 [96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450] (1976).
 
 
 12
 Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (footnote omitted). Thus, at a minimum the appellants must be able to establish that they suffered a distinct and palpable injury as a result of the actions of the City of La Crosse. See Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (to have standing a plaintiff must allege a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."); Valley Forge, 454 U.S. at 473, 102 S.Ct. at 759; Warth, 422 U.S. at 501, 95 S.Ct. at 2206.
 
 
 13
 Provided a litigant alleges the existence of a distinct and palpable injury, even a minor injury can satisfy the case or controversy requirement of Article III. See American Civil Liberties Union of Illinois v. City of St. Charles, 794 F.2d 265 (7th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 458, 93 L.Ed.2d 403 (1986) (plaintiffs' averment that they altered their normal routes of travel to avoid viewing a lighted cross displayed on public property satisfied Article III standing requirements). Furthermore, standing can be predicated on a non-economic injury. United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). The injury that the appellants claim they have suffered as a result of the Cameron Park display is a non-economic injury. They allege that the display is a rebuke to their religious beliefs and that they are offended by its presence; but they admit that they have not altered their behavior as a result of the monument. The psychological harm that results from witnessing conduct with which one disagrees, however, is not sufficient to confer standing on a litigant. Valley Forge, 454 U.S. at 485-86, 102 S.Ct. at 765-66. See also City of St. Charles, 794 F.2d at 268 (the mere fact that plaintiffs were offended by display of a lighted cross on public property could not confer standing; plaintiffs had standing only because they altered their behavior to avoid seeing the cross).
 
 
 14
 Even if a party satisfies the constitutional standing criteria, however, there are prudential considerations that may affect a litigant's standing to bring a particular action in federal court. For instance, a plaintiff generally must assert his or her own legal rights, not those of a third party. Warth, 422 U.S. at 499, 95 S.Ct. at 2205. In addition, courts will refrain from "adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." Valley Forge, 454 U.S. at 475, 102 S.Ct. at 760 (quoting Warth, 422 U.S. at 499-500, 95 S.Ct. at 2205-06). Finally, courts will not hear cases that do not fall within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Association of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970).
 
 
 15
 The appellants in this case have failed to meet the minimum case or controversy requirement of Article III. The appellants concede that they did not alter their behavior in any manner as a result of the Ten Commandments monument; they allege only that they have suffered "a rebuke to [their] religious beliefs respecting religion by virtue of being subjected to a governmental endorsement of unequivocally religious precepts and confusions." Appellants' brief at 8. But this is exactly the type of psychological harm that the Supreme Court has held cannot confer standing on an aggrieved party. Valley Forge, 454 U.S. at 486-87 n. 22, 102 S.Ct. at 765-66 n. 22 (spiritual stake in first amendment values alone is insufficient to give a litigant standing to bring action in federal court).[3] Because the appellants do not have constitutional standing, we need not consider whether any prudential considerations may deny the appellants standing to challenge the constitutionality of the Cameron Park display.
 
 B.
 
 16
 The appellants also argue that Phyllis Grams has standing simply as a result of her close proximity to the allegedly unconstitutional display in Cameron Park. In City of St. Charles this court indicated that, for purposes of standing analysis, perhaps it
 
 
 17
 ought to make a difference if ... a plaintiff is complaining about the unlawful establishment of religion by the city, town, or state in which he lives, rather than about such an establishment elsewhere; he might be intensely distressed to find himself living in a jurisdiction that had an established church.
 
 
 18
 794 F.2d at 268. See also Valley Forge, 454 U.S. at 486-87, 102 S.Ct. at 765-66 (the Court stressed the geographical distance between the plaintiffs who lived in Maryland and Virginia and the challenged property transfer in Pennsylvania when finding that the plaintiffs lacked standing).
 
 
 19
 Although Grams lives in the City of La Crosse, the appellants did not demonstrate that she lives anywhere near Cameron Park, that the monument is visible in the course of her normal routine, or that her usual driving or walking routes take her past the park. The appellants also failed to establish that Grams suffered any injury simply because of her close proximity to the monument. Although in some circumstances proximity to the offending conduct may suffice to confer standing, Grams failed to prove her proximity to the allegedly unconstitutional display. We therefore conclude that Grams cannot establish Article III standing simply on the basis of her alleged but unproven proximity to the offending conduct.
 
 C.
 
 20
 The Freedom From Religion Foundation also asserts that it has independent organizational standing to challenge the constitutionality of the Cameron Park display. The Foundation neither alleged nor proved that it has itself suffered any distinct and palpable injury as a result of the monument. But "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members." Warth, 422 U.S. at 511, 95 S.Ct. at 2211. If an organization does not allege an injury to itself, however, its assertion of standing cannot be different from the standing of the members it represents. Valley Forge, 454 U.S. at 476 n. 14, 102 S.Ct. at 761 n. 14. See also Warth, 422 U.S. at 511, 95 S.Ct. at 2211 (representational standing alone cannot satisfy the constitutional standing requirement of a case or controversy).
 
 
 21
 To meet the standing requirements of Article III "[t]he association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." Id. See also International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Brock, 477 U.S. 274, 281-82, 106 S.Ct. 2523, 2529, 91 L.Ed.2d 228 (1986); Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).
 
 
 22
 [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.
 
 
 23
 Hunt, 432 U.S. at 343, 97 S.Ct. at 2441.
 
 
 24
 In the present case, the appellants have not claimed or established that any member of the Foundation could allege a distinct and palpable injury sufficient to allow them to bring this suit. Thus, the Foundation does not have organizational standing to bring this action.
 
 III.
 A.
 
 25
 The appellants also assert that Phyllis Grams has municipal taxpayer standing. The seminal case on the issue of taxpayer standing is Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). Frothingham held that federal taxpayers generally do not have standing to challenge the constitutionality of federal expenditures. The Court noted, however, that it did not intend to disturb the general rule that municipal taxpayers do have standing to challenge the improper use of tax revenues. Id. at 486, 43 S.Ct. at 600 ("[R]esident taxpayers may sue to enjoin an illegal use of the moneys of a municipal corporation."). See Schreiber v. Lugar, 518 F.2d 1099, 1101 n. 2 (7th Cir.1975) ("Plaintiffs' standing as municipal taxpayers appears to be established by Frothingham."). In Flast v. Cohen, 392 U.S. 83, 102, 88 S.Ct. 1942, 1954, 20 L.Ed.2d 947 (1968), the Court established a limited exception to the general rule that federal taxpayers do not have standing to challenge federal expenditures. The Court held that a federal taxpayer may have standing if (1) he or she can establish a logical nexus between taxpayer status and the type of action that is challenged; and (2) the taxpayer can demonstrate a link between that status and the precise nature of the constitutional violation alleged. Id. See also Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 479-80, 102 S.Ct. 752, 762-63, 70 L.Ed.2d 700 (1982) (plaintiffs did not have taxpayer standing because the source of their complaint was not a congressional action).
 
 
 26
 There has been some question regarding the possible restrictive effect of the Court's decision in Valley Forge on the doctrine of municipal taxpayer standing. See, e.g., Hawley v. City of Cleveland, 773 F.2d 736, 741-42 (6th Cir.1985), cert. denied, 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986). Because Valley Forge involved a challenge by federal taxpayers to an allegedly unconstitutional transfer of federal property, its holding--that the taxpayers did not have standing because they were not complaining about an exercise of authority under the taxing and spending clause of Article I, Sec. 8 of the Constitution--does not affect the viability of the doctrine of municipal taxpayer standing. See Hawley, 773 F.2d at 741-42 (for purposes of standing, the distinction between challenges by federal as opposed to municipal taxpayers is critical). Thus, the Court's decision in Valley Forge, which related only to the issue of federal taxpayer standing, does not affect the doctrine of municipal taxpayer standing.
 
 B.
 
 27
 Although a litigant may have standing as a municipal taxpayer to challenge unconstitutional acts that affect public finances, the appellants in this case did not satisfy two threshold criteria for establishing municipal taxpayer standing. First, the appellants failed to allege or prove that Grams actually is a La Crosse municipal taxpayer. Second, even if we presume that Grams is a taxpayer, the appellants did not establish that the City of La Crosse has used tax revenues on the allegedly unconstitutional display in Cameron Park.
 
 
 28
 A plaintiff's status as a municipal taxpayer is irrelevant for standing purposes if no tax money is spent on the allegedly unconstitutional activity. American Civil Liberties Union v. City of St. Charles, 794 F.2d 265, 267 (7th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 458, 93 L.Ed.2d 403 (1986). The appellants concede that no tax money has been spent on the monument; rather, they contend that the city's initial expenditure of $6,000 in 1899 to purchase the land for the park satisfied the revenue expenditure requirement of municipal taxpayer standing. We disagree. The allegedly unconstitutional activity in this case is the display of a monument of the Ten Commandments in Cameron Park, and the appellants concede that no tax money has been spent on this activity. Thus, Grams' possible status as a municipal taxpayer is irrelevant, and we do not reach the question of the appellants' apparent failure to prove that Grams actually is a La Crosse taxpayer. The appellants therefore did not establish municipal taxpayer standing.
 
 IV.
 
 29
 We agree with the district court that the appellants did not establish standing to challenge the constitutionality of the Ten Commandments monument on display in Cameron Park. Because the appellants 1) failed to allege a distinct and palpable injury resulting from the allegedly unconstitutional action of the City of La Crosse; 2) did not establish that Grams was a municipal taxpayer or that the city had used tax money to erect or maintain the monument; 3) failed to establish standing on the basis of mere proximity to the challenged action; and 4) did not meet the requirements for representational standing for the Foundation, they do not have standing to bring this action.[4] The district court's judgment dismissing the appellants' claims for lack of standing is
 
 
 30
 AFFIRMED.
 
 
 
 *
 The Honorable Robert A. Grant, Senior District Judge of the United States District Court for the Northern District of Indiana, is sitting by designation
 
 
 [1]
 At the time, the Fraternal Order of Eagles was engaged in a national project of donating similar monuments of the Ten Commandments to cities and towns across the United States
 
 
 [2]
 Phyllis Grams is a resident of La Crosse, Wisconsin; Annie Laurie Gaylor is the editor of the Freedom From Religion Foundation's publication Free Thought Today; and Anne Nicol Gaylor is the President of the Freedom From Religion Foundation
 
 
 [3]
 The appellants allege that their psychological injury should suffice to fulfill the Article III standing requirements because they have demonstrated the severity of their distress by complaining to the Common Council of La Crosse about the monument and then filing this lawsuit. These acts of complaining alone do not constitute an injury in fact. If the appellants were unwilling to go to Cameron Park because of the presence of the Ten Commandments monument, they would have adequately alleged a distinct and palpable injury because their right to the use of a public park would have been adversely affected by the presence of a possibly unconstitutional display. The appellants, however, affirmatively testified that they have not been deprived of the use or enjoyment of Cameron Park or of the City of La Crosse; they have not altered their behavior in any fashion or suffered any detriment other than mere psychological discomfort
 The Supreme Court has held that irrespective of the fervor with which a litigant is committed to the principle of separation of church and state, that commitment alone does not satisfy the standing doctrine. Valley Forge, 454 U.S. at 485-87, 102 S.Ct. at 765-66 (a litigant's claim that the establishment clause has been violated does not "provide a special license to roam the country in search of governmental wrongdoing" to be reviewed in federal court). Similarly, the appellants' commitment to the principal of separation of church and state, evidenced by their willingness to complain about the monument to the Common Council and to file this lawsuit, cannot substitute for their failure to demonstrate that they have suffered any distinct and palpable injury.
 
 
 [4]
 In their complaint, the appellants also raised pendent state law claims. Specifically, the appellants alleged that public funds were spent on the display in violation of Article I, Sec. 18 of the Wisconsin Constitution. Although the district court did not explicitly address the question of its jurisdiction over these claims, it is clear from the court's order dismissing the appellants' entire action that the court declined to exercise its discretion to hear these pendent claims. Because the appellants failed to establish that any public funds have been expended on the Cameron Park display, the appellants may not have standing under Wisconsin law to raise these claims. We do not reach this issue, however, because we conclude that based on the appellants' lack of standing to raise their federal claims, the district court properly dismissed the appellants' pendent state law claims. See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (generally when federal claims are dismissed before trial, pendent state claims should also be dismissed)