**Jane DOE, Richard Roe, and Richard T. Stein, Plaintiffs,**

v.

**The COUNTY OF MONTGOMERY, STATE of ILLINOIS, Defendant.**

No. 94–3015.

United States District Court, C.D. Illinois, Springfield Division.

April 7, 1994.

F. Thomas Hecht, James M. Falvey, E. Glenn Rippie, Hopkins & Sutter, Chicago, IL, Donald M. Craven, Springfield, IL, Harvey Grossman, Jane M. Whicher, Roger Baldwin Foundation of ACLU, Inc., Chicago, IL, for plaintiffs.

Kathryn Dobrinic, Montgomery County State's Atty., Hillsboro, IL, for defendant.

## OPINION

RICHARD MILLS, District Judge:

*"Why should we employ the energy that is furnished to us by the cosmos to defy it and shake our fist at the sky?"*

O.W. Holmes, "Natural Law," from the *Collected Legal Papers.*

■ PLAINTIFFS: Two anonymous residents of Montgomery County, Illinois, and Edward T. Stein, a lawyer from Chicago, Illinois.

SIGN: Ten foot long and approximately one and one-half feet high with lettering approximately one foot high.

LOCATION: over the main entrance of the Montgomery County Courthouse, Hillsboro, Montgomery County, Illinois.

MESSAGE: "THE WORLD NEEDS GOD"

ARGUMENT: Whether the sign constitutes state sponsorship of religion in violation of the Establishment Clause.

ISSUE: Do the anonymous Plaintiffs, and Attorney Stein, have standing to raise the constitutionality issue?

HOLDING: No.

### I. *The Allegations*

The Montgomery County Courthouse ("courthouse") is located in Hillsboro, Mont-

gomery County, Illinois. The courthouse is a three-story red brick building, and houses the offices of the State's Attorney, County Clerk, County Treasurer and Sheriff, and courtrooms for the Fourth Judicial Circuit Court of Illinois. The courthouse also serves as the meeting place of the Montgomery County Board, as a polling place and place of voter registration, and other government functions. The courthouse is the seat of county government for Montgomery County.

Displayed over the entrance of the courthouse is a permanent metal sign ("the sign") bearing the message "THE WORLD NEEDS GOD." The sign is at least ten feet long and approximately one and one-half feet high with lettering approximately one foot high. While the courthouse has several entrances, the sign is displayed over the main, most prominent entrance. The sign has been displayed over this entrance since 1936.

Plaintiffs Doe and Roe claim that they are residents of Montgomery County, Illinois. Both object to Montgomery County's sponsorship of the religious message on the sign and wish to avoid the sign. However, both claim that to participate fully as citizens of the County, they must enter the Courthouse.

For example, Plaintiff Doe alleges that in the past, she has both chosen and been compelled to participate in criminal and/or civil cases before the Fourth Judicial Circuit Court of Illinois which has offices and courtrooms in the Montgomery County Courthouse. She also states that she may either choose or be compelled to participate in Circuit Court proceedings in the future. Similarly, Plaintiff Doe alleges that she is subject to being called for jury duty for trials held at the courthouse, and that she must enter the courthouse in order to visit the offices of the Montgomery County State's Attorney, County Clerk, County Treasurer and Sheriff, and to attend public meetings of the County Board. In order to participate in any of these Montgomery County functions, Plaintiff Doe alleges that she must come into direct, unwelcome contact with the sign.

Like Plaintiff Doe, Plaintiff Roe states that he has in the past and may in the future be legally compelled to enter the courthouse. He claims that he has been called for jury duty for trials in the courthouse in the past and that he is presently subject to being called for jury duty in the future. Moreover, Plaintiff Roe alleges that he has registered to vote at the courthouse, and has obtained absentee ballots at the courthouse. Like Plaintiff Doe, Plaintiff Roe states that he must enter the courthouse to visit the offices of the Montgomery County State's Attorney, County Clerk, County Treasurer and Sheriff, and to attend public meetings of the County Board.

Plaintiff Stein alleges that he is a licensed Illinois attorney who resides in Cook County, Illinois. He also objects to the display of the sign on the courthouse and will not represent clients whose cases would be heard in the Montgomery County Courthouse. In addition, he states that he may in the future have occasion to visit the offices of other government officials in the courthouse and will be deterred from doing so because of the presence of the sign on the courthouse.

The Plaintiffs pray that this Court enter a declaratory judgment that Defendant violated the Establishment Clause of the First Amendment by displaying the sign at the Montgomery County Courthouse. Plaintiffs also seek an order that the sign be removed and that the Montgomery County be enjoined against raising signs in the future. In addition, Plaintiffs seek attorneys' fees and costs.

### I. *Legal Standard*

The sole issue before this Court is whether the Plaintiffs have standing to challenge the constitutionality of the sign on display in the Montgomery County Courthouse. "An analysis of a litigant's standing to bring an action in federal court focuses not on the claim itself, but on the party who is bringing the challenge." *Freedom From Religion Foundation, Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir.1988) (citation omitted). "Standing is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Id.* (citations omitted).

A court is constrained, in determining a party's standing to assert a particular claim,

to " 'accept as true all material allegations of the complaint, and [to] construe the complaint in favor of the complaining party.' " *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979) (quoting *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975)). Also to be considered in the standing analysis, along with the allegations made in the complaint, are such other facts and circumstances as may be evident from the record. *Id.,* 441 U.S. at 110 n. 22, 99 S.Ct. at 1613 n. 22.

## II. *Analysis*

### A. *Law of the United States Supreme Court*

■ To demonstrate standing, Plaintiffs must allege an actual or threatened personal injury, fairly traceable to the Defendant's unlawful conduct and likely to be redressed by a favorable decision of this Court. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). Standing under the Establishment Clause may be predicated on a non-economic injury. *Id.* at 486, 102 S.Ct. at 766. When alleging a non-economic injury as in the case at bar, Plaintiffs must be "directly affected by the laws and practices against which their complaints are directed." *Id.* at 486 n. 22, 102 S.Ct. at 766 n. 22 (quoting *School District of Abington Township v. Schempp,* 374 U.S. 203, 224 n. 9, 83 S.Ct. 1560, 1572 n. 9, 10 L.Ed.2d 844 (1963)).

In *Valley Forge,* the petitioners claimed that the government's conveyance of property to a Christian college violated the Establishment Clause. The petitioners were residents of Maryland and Virginia who learned of the transfer through news releases. None alleged that they would use the property located in Pennsylvania, but they contended that the transfer deprived them of the fair use of their tax dollars. The Court found

that they lacked standing because they "fail[ed] to identify any personal injury suffered by them *as a consequence* of the alleged constitutional error, other than the psychological consequences presumably produced by the observation of conduct with which one disagrees." *Id.,* 454 U.S. at 485, 102 S.Ct. at 765 (Emphasis ours).

Moreover, *Valley Forge* limited the scope of language in *Schempp* [1] and *Association of Data Processing Service Org., Inc. v. Camp,* 397 U.S. 150, 154, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). Respondents in *Valley Forge* argued that *Schempp* stood for the proposition that standing existed where a person had a "spiritual stake" in the outcome of the case. *Valley Forge,* 454 U.S. at 486 n. 22, 102 S.Ct. at 766 n. 22. The respondents' argument was based on language in *Camp:* "[a] person or family may have a spiritual stake in First Amendment values sufficient to give standing to raise issues concerning the Establishment Clause and the Free Exercise Clause. *Abington School Dist. v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560." *Valley Forge* held that the plaintiffs in *Schempp* had standing, not because their complaint rested on the establishment clause (e.g. a "spiritual stake" as in *Schempp* ), but "because impressionable schoolchildren were subjected to *unwelcome religious exercises* or were *forced to assume special burdens* to avoid them." *Valley Forge,* 454 U.S. at 486 n. 22, 102 S.Ct. at 766 n. 22. (Emphasis ours).

### B. *Law of the Seventh Circuit*

The Seventh Circuit has yet to extend standing for plaintiffs subjected to "unwelcome religious exercises" articulated in *Valley Forge. Harris v. City of Zion, Lake County, Ill.,* 927 F.2d 1401, 1404–06 (7th Cir.1991). Instead, the Seventh Circuit emphasized *Valley Forge's* limitation that a plaintiff has standing only where she has assumed "special burdens." [2] Specifically, in

1. In *Schempp,* the Court invalidated laws that required Bible reading in the public schools.

2. Other circuit courts have interpreted *Valley Forge* differently. The Fifth, Sixth, Tenth, and Eleventh Circuits find standing based on an allegation of direct personal contact with the offensive action. *See e.g., Saladin v. City of Milledge-*

*ville,* 812 F.2d 687 (11th Cir.1987) (standing because plaintiffs were confronted directly by the presence of word "Christianity" on city seal); *Hawley v. City of Cleveland,* 773 F.2d 736 (6th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986) (standing because plaintiffs alleged sectarian use of public property

the Seventh Circuit, a plaintiff has standing only where she alleges that a government entity's action offends her and that she has altered her behavior as a consequence of it. *Harris,* 927 F.2d at 1405 (use of city seal on automobile tax stickers and garbage bags which plaintiffs were required to use *and* plaintiffs' altering their travel routes to avoid viewing seal painted on city water tower sufficient to confer standing); *Freedom From Religion v. Zielke,* 845 F.2d 1463 (7th Cir.1988) (residents had no standing to challenge Ten Commandments display in city park because they did not allege a change in behavior or usual walking or driving routes around the park); *American Civil Liberties Union v. City of St. Charles,* 794 F.2d 265 (7th Cir.), *cert. denied,* 479 U.S. 961, 107 S.Ct. 458, 93 L.Ed.2d 403 (1986) (mere fact that display of lighted cross on public property offends plaintiff could not confer standing; he must allege that he altered his behavior to avoid the cross); *Gonzales v. North Township of Lake County, Ind.,* 4 F.3d 1412, 1416 (7th Cir.1993) (standing found were plaintiff avoided area of the park where crucifix was located).

### C. *Application of law*

In our case, the Court finds that Plaintiffs have not pled or otherwise indicated that they have been forced to assume any special burden or altered their behavior because of the sign. With respect to Plaintiffs Doe and Roe, although they both express a wish to avoid the sign, neither have altered their behavior because of the sign. Any psychological harm that results from witnessing the sign is not sufficient to confer standing. *Valley Forge,* 454 U.S. at 485–86, 102 S.Ct. at 765–66, *City of St. Charles,* 794 F.2d at 268.

Similarly, though Plaintiff Stein alleges that he presently will not represent clients whose cases would be heard in the Montgomery County Courthouse, there is no indication that he has actually turned down any client because of the sign. He must allege an injury that is "distinct and palpable," *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206, and not "abstract," "conjectural," or "hypothetical." *Allen v. Wright,* 468 U.S. 737, 751, 104

S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (quoting *Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1664–65, 75 L.Ed.2d 675 (1983)). The hypothetical loss of a potential client, or the loss of a potential practice in Montgomery County is not sufficient to confer standing.

The Court also finds that Plaintiffs' alternative arguments are also without merit. First, Plaintiffs Doe and Roe contend that they have been involuntarily subjected to the alleged religious message of the sign. This is because either Plaintiff may be compelled to jury duty at the courthouse which would force them into unwelcome contact with the sign.

This argument was squarely rejected in *Harris.* In *Harris,* plaintiffs were offended by the municipalities requirement that they display an objectionable·city tax seal on the windshield of their automobile. The plaintiffs also objected to the city's requirement that they dispose of their household refuse·in garbage sacks that also displayed the seal. *Harris,* 927 F.2d at 1407. To avoid contact with the city's seal, one plaintiff also alleged that he avoided the particular route that brought him within visual contact with the water tower which exhibited the offensive city logo.

The Seventh Circuit found that Plaintiffs had standing. However, the court noted that "the fact that the plaintiffs may be offended by the seals of Rolling Meadows and Zion *does not confer standing.* It is the willingness of the plaintiffs to incur a tangible, albeit small cost that validates the existence of genuine distress and warrants the invocation of federal jurisdiction." *Id.* at 1406 (citing *St. Charles,* 794 F.2d at 268) (emphasis ours). In other words, the fact that plaintiffs were involuntarily compelled (probably by city ordinance) to place the offensive city tax stickers on their automobile, or to use the offensive trash bags with the city's logo in view was insufficient to incur standing. The *Harris* plaintiffs only had standing because they deviated from their normal transportation routes (and thus assumed a tangible

that impairs their use and enjoyment of property); *Foremaster v. City of St. George,* 882 F.2d

1485 (10th Cir.1989) (same); *Murray v. City of Austin, Tex.,* 947 F.2d 147 (5th Cir.1991) (same).

burden) to avoid contacting the offensive seal.

This interpretation of *Harris* is confirmed by *Zielke* which denied standing to a plaintiff who was offended by a park display but did not alter his behavior because of the display. *Zielke,* 845 F.2d at 1466–68.

In sum, as in *Harris,* our Plaintiffs may be compelled to view the County "seal" (whether it is on a courthouse or trash bags). They will not have standing unless they assume some burden to avoid contacting the alleged offensive sign.

Second, Plaintiffs argue that although Plaintiffs Doe and Roe are not legally compelled to vote or otherwise participate in government, Montgomery County allegedly effectively conditioned the exercise of voting and other civic rights on Plaintiffs' unwelcome contact with the sign. Plaintiffs support this claim with a scant two paragraph analysis and citation to cases which prohibit state sponsored school prayer. *See e.g., Schempp,* 374 U.S. at 224, 83 S.Ct. at 1572.

The Court's research finds no precedent to support Plaintiffs' argument. Moreover, as in *Harris,* the Seventh Circuit tacitly approved the condition of some privileges (e.g. an automobile sticker for parking within the city or trash collection) on the contact with an unwelcome city seal.

Lastly, the Court's reasoning is not disturbed by any alleged geographic proximity of Plaintiffs Roe and Doe to the courthouse sign. The Seventh Circuit twice alluded to the possibility that the close proximity of a plaintiff to the offensive object may constitute standing: "[m]aybe it ought to make a difference if (as here) a plaintiff is complaining about the unlawful establishment of a religion by the city, town, or state in which he lives, rather than about such an establishment elsewhere"; ... *St. Charles,* 794 F.2d at 268 (Posner, J.); "[a]lthough in some circumstances proximity to the offending conduct may suffice to confer standing, Grams [plaintiff] failed to prove her proximity to the allegedly unconstitutional display." *Zielke,*

845 F.2d at 1469 (Flaum, J.). However, at this time, the Seventh Circuit has not articulated any precedent or criteria for standing based on geographic proximity. Therefore, the Court does not find that Plaintiffs have standing based upon any alleged geographic proximity to the courthouse sign.

*Ergo,* because this Court finds that Plaintiffs have not demonstrated or alleged facts that they have standing to contest the constitutionality of the sign on the Montgomery County Courthouse, the Court will DISMISS THIS LAWSUIT WITH COSTS.[3] All pending motions are denied as moot.

Case CLOSED.

---

**3.** Because the Court is dismissing this case for lack of standing, the Court will not consider Defendant's claim that this Court lacks jurisdiction because the Defendant intends to move some of its court-related facilities to a new building in the future.