**Jane DOE, Richard Roe, and Edward T. Stein, Plaintiffs–Appellants,**

**v.**

**The COUNTY OF MONTGOMERY, IL-LINOIS, a body politic and corporate, Defendant–Appellee.**

No. 94–1981.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1994.

Decided Dec. 5, 1994.

E. Glenn Rippie, F. Thomas Hecht (argued), James M. Falvey, Hopkins & Sutter, Chicago, IL, Donald M. Craven, Springfield, IL, Harvey M. Grossman, Jane M. Whicher, Roger Baldwin Foundation of A.C.L.U., Inc., Chicago, IL, for plaintiffs-appellants.

Kathryn Ann Slepicka Dobrinic (argued), Montgomery County State's Atty., Hillsboro, IL, for defendant-appellee.

Before BAUER, KANNE and ROVNER, Circuit Judges.

BAUER, Circuit Judge.

This appeal presents the question of whether plaintiffs Jane Doe, Richard Roe, and Edward T. Stein have standing to challenge the constitutionality of a sign over the main entrance to the Montgomery County Courthouse in Hillsboro, Illinois which states, "THE WORLD NEEDS GOD." The district court concluded that the plaintiffs had failed to allege sufficient facts to establish their

standing and granted defendant Montgomery County's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). We affirm in part, reverse in part, and remand for further proceedings.

## I.

The plaintiffs' complaint alleges the following facts. The Montgomery County Courthouse, which is located in Hillsboro, Illinois, is the seat of county government for Montgomery County (the "County"). The courthouse contains offices of the State's Attorney, County Clerk, County Treasurer and Sheriff, and courtrooms for the Fourth Judicial Circuit Court of Illinois. The courthouse also serves as a meeting place of the County Board and as a place of voter registration and other government functions.

A permanent metal sign is displayed over the main and most prominent entrance to the courthouse which states, "THE WORLD NEEDS GOD." There are several other entrances to the courthouse. The sign is at least ten feet long and approximately one and one-half feet high with lettering approximately one foot high. Its message is visible within several hundred feet. The sign was placed on the courthouse in 1935 or 1936 by the Federated Women's Bible Club (which is now defunct) with the approval of the County Board.

Plaintiffs Jane Doe and Richard Roe are residents of the County. Doe and Roe object to and wish to avoid the sign. Doe and Roe must use the courthouse, however, to fully participate as citizens of the County and to fulfill certain legal obligations. Roe has been called for jury duty at the courthouse, and both Doe and Roe are subject to being called for jury duty again. Doe has chosen and been compelled to participate in civil and criminal cases before the Fourth Judicial Circuit Court, and Doe and Roe may choose or be compelled to participate in such cases in the future. Roe registered to vote and obtained absentee ballots at the courthouse. Doe and Roe must enter the courthouse to visit the offices of the State's Attorney, County Clerk, County Treasurer and Sheriff, and to attend meetings of the County Board. Doe and Roe must come into direct and unwelcome contact with the sign in order to use the main entrance.

Plaintiff Edward T. Stein is an attorney who is licensed to practice law in Illinois. His practice is based in Chicago but he represents persons throughout Illinois. Stein objects to the sign and will not represent clients whose cases would be heard in the courthouse. Stein also alleges that "he may in the future have occasion to visit the offices of other government officials" in the courthouse and will be deterred from doing so because of the sign.

The Board of Commissioners of the County voted to refuse to remove the sign from the courthouse after being requested to remove the sign by plaintiffs' counsel. The plaintiffs then filed this action pursuant to 42 U.S.C. § 1983, asserting that the County's display and sponsorship of the sign violates the Establishment Clause of the First Amendment of the Constitution, which is applicable to state and local governments through the Fourteenth Amendment. The plaintiffs seek a declaratory judgment that the display of the sign violates the Establishment Clause and a permanent injunction requiring the County to remove the sign and forbidding its display on the courthouse in the future. The district court granted the County's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) on the ground that the plaintiffs had failed to allege sufficient facts to establish their standing to bring the suit. 848 F.Supp. 832, 836 (C.D.Ill.1994).

## II.

■ We review the district court's grant of the County's motion to dismiss the complaint *de novo*, accepting as true all facts alleged in the well-pleaded complaint and drawing all reasonable inferences in favor of the plaintiffs. *Family & Children's Ctr., Inc. v. School City of Mishawaka*, 13 F.3d 1052, 1057, 1059 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994).

■ Article III of the Constitution limits the judicial power of the United States to the resolution of "cases" and "controversies."

"The constitutional power of federal courts cannot be defined, and indeed has no substance, without reference to the necessity 'to adjudge the legal rights of litigants in actual controversies.'" *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citation omitted). The doctrine of standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Although some elements of standing "express merely prudential considerations that are part of judicial self-government," Article III requires that the plaintiff has suffered an "injury in fact" which is fairly traceable to the challenged action of the defendant and "likely," as opposed to merely "speculative," to be "redressed by a favorable decision." *Id.* (citations omitted); *Valley Forge,* 454 U.S. at 472, 102 S.Ct. at 758.

■ An "injury in fact" is an invasion of a legally-protected interest which is (1) concrete and particularized, that is, affecting the plaintiff in a personal and individual way; and (2) actual or imminent and not merely conjectural or hypothetical. *Lujan,* —— U.S. at ——, 112 S.Ct. at 2136 (citations omitted). A plaintiff who fails to identify any personal injury suffered as a consequence of the alleged constitutional error, "other than the psychological consequence presumably produced by observation of conduct with which one disagrees," has no standing under Article III. *Valley Forge,* 454 U.S. at 485, 102 S.Ct. at 765. A plaintiff who is subjected to unwelcome religious exercises or is forced to assume "special burdens" to avoid them, however, has demonstrated an "injury in fact." *Id.* at 486–87 n. 22, 102 S.Ct. at 766 n. 22. "[A]n identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation." *United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417 n. 14, 37 L.Ed.2d 254 (1973) (citation omitted).

■ The party invoking federal jurisdiction bears the burden of establishing the elements of standing. *Lujan,* —— U.S. at ——, 112 S.Ct. at 2136. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct are sufficient to overcome a motion to dismiss, for on a motion to dismiss the court presumes that "general allegations embrace those specific facts that are necessary to support the claim." *Id.* at ——, 112 S.Ct. at 2137 (citation omitted).

■ The district court misapplied the foregoing principles in concluding that the allegations of Doe and Roe are insufficient to confer standing. Both Doe and Roe allege that they must come into direct and unwelcome contact with the sign in order to fully participate as citizens of the County and to fulfill certain legal obligations. Their allegations of direct and unwelcome exposure to a religious message cannot be distinguished from the "injuries" of other plaintiffs who have had standing to bring claims under the Establishment Clause.

In *Lee v. Weisman,* —— U.S. ——, ——, 112 S.Ct. 2649, 2661, 120 L.Ed.2d 467 (1992), the Supreme Court held that invocations and benedictions by members of the clergy at official public school graduation ceremonies violate the Establishment Clause. The plaintiffs were a graduating student and her father who objected to the prayers but wished to participate in the ceremony; their attendance was not required by the school for receipt of the diploma. *Id.* at ——, 112 S.Ct. at 2653–55. In *Abington School Dist. v. Schempp,* 374 U.S. 203, 224 n. 9, 83 S.Ct. 1560, 1572 n. 9, 10 L.Ed.2d 844 (1963), the Court held that school children and their parents had standing to challenge laws requiring Bible reading in public schools, even though a student could be absent from the classroom or not participate in the reading. *See also County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter,* 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (ACLU and local residents had standing to challenge the display of a crèche and menorah on public property in downtown Pittsburgh); *Wallace v. Jaffree,* 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29

(1985) (school children had standing to challenge a state statute authorizing a one-minute period of silence in all public schools for meditation or voluntary prayer); *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (ACLU and local residents had standing to challenge the display of a crèche in a park by the city of Pawtucket, Rhode Island); *Stone v. Graham*, 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980) (per curiam) (plaintiffs had standing to challenge a statute which required the posting of a copy of the Ten Commandments on the wall of each public classroom in the State of Kentucky).

Decisions of this court also make clear that the allegations of Doe and Roe are sufficient to confer standing. In *Sherman v. Community Consol. School Dist. 21 of Wheeling Township*, 980 F.2d 437, 441 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2439, 124 L.Ed.2d 658 (1993), we held that a student obliged by school attendance laws to be present during the recitation of the Pledge of Allegiance and who was the potential object of coercion to participate had standing to challenge a statute requiring recitation of the Pledge. In *Harris v. City of Zion, Lake County, Illinois*, 927 F.2d 1401, 1404–09 (7th Cir.1991), *cert. denied,* —— U.S. ——, ——, 112 S.Ct. 3025, 3054, 120 L.Ed.2d 897, 920 (1992), we held that citizens of the cities of Zion and Rolling Meadows, Illinois had standing to challenge their municipalities' corporate seals. The plaintiffs had altered their travel routes to avoid viewing the seals and were required to display automobile tax stickers containing the seals and use the seals on garbage collection stickers. *Id.* at 1405. In *American Jewish Congress v. City of Chicago*, 827 F.2d 120 (7th Cir.1987), the American Jewish Congress had standing to challenge the constitutionality of the display of a crèche in the Chicago City–County Building; the only "injury" which could have been alleged by the plaintiffs was unwelcome exposure to the crèche. *See also Berger v. Rensselaer Cent. School Corp.*, 982 F.2d 1160, 1164 n. 4 (7th Cir.) (father of public school children had standing to challenge school policy permitting the distribution of Gideon Bibles in the public schools), *cert. denied,* —— U.S. ——, 113 S.Ct. 2344, 124 L.Ed.2d 254 (1993); *American Civil Liberties Union v. City of St. Charles*, 794 F.2d 265, 268–69 (7th Cir.) (plaintiffs who were exposed to a lighted cross on public property during their accustomed routes of travel had standing to enjoin its display), *cert. denied,* 479 U.S. 961, 107 S.Ct. 458, 93 L.Ed.2d 403 (1986).

■ Notwithstanding this substantial line of authority supporting the standing of Doe and Roe, the district court concluded that their allegations are akin to psychological injuries resulting from the observation of offensive conduct, which were condemned in *Valley Forge* as insufficient to confer standing. *Valley Forge*, 454 U.S. at 485, 102 S.Ct. at 765. The district court, while acknowledging that other circuits have interpreted *Valley Forge* differently, reasoned that in this circuit direct and unwelcome exposure to a religious message is merely a psychological injury unless a plaintiff assumes a "special burden" or alters his behavior because of the religious message.[1] 848 F.Supp. at 834–35. This proposition is not supported by decisions of the Supreme Court or this court. The plaintiffs in *Lee v. Weisman, Wallace, Stone, Schempp, Sherman,* and *Berger* did not assume "special burdens" or alter their behavior because of religious conduct, yet they had standing to raise their constitutional challenges.[2] Although the plaintiffs in

---

**1.** The district court, as an alternative ground for its conclusion that the allegations of Doe and Roe are insufficient to confer standing, reasoned that *Valley Forge* limited *Schempp* by concluding that plaintiffs who are merely exposed to unwelcome religious conduct have no standing to challenge its constitutionality. 848 F.Supp. at 834. If this were correct, of course, the plaintiffs' claims in *Lee v. Weisman, County of Allegheny, Wallace, Lynch, Sherman,* and *Berger,* all of which were decided after *Valley Forge,* would have been dismissed for lack of standing. It is not correct. The Court in *Valley Forge* reaffirm-

ed *Schempp*'s holding that plaintiffs "subjected to unwelcome religious exercises" have standing to raise a constitutional challenge. *Valley Forge*, 454 U.S. at 486–87 n. 22, 102 S.Ct. at 766–67 n. 22.

**2.** Perhaps recognizing the district court's misreading of these precedents, the County asserts that these cases only create a limited exception to the doctrine of standing for "impressionable school children." While we have recognized that "alleged violations of the Establishment

*Harris* did alter their behavior to avoid the challenged conduct, this factor alone was not controlling; the plaintiffs were also subject to direct and unwelcome exposure to religious messages. *Harris,* 927 F.2d at 1405.

*Freedom From Religion Found., Inc. v. Zielke,* 845 F.2d 1463 (7th Cir.1988) is not to the contrary. In *Zielke,* we affirmed the district court's dismissal of a challenge to the display of a monument of the Ten Commandments in a city park for lack of standing. The plaintiffs did not alter their behavior as a result of the monument and failed to demonstrate that they were exposed to the monument during their normal routines or in the course of their usual driving or walking routes. *Zielke,* 845 F.2d at 1468–69. In contrast, Doe and Roe allege that they must come into direct and unwelcome contact with the sign in order to participate in their local government and fulfill their legal obligations.[3]

Unlike the allegations of Doe and Roe, Stein's complaint[4] appears strained. Stein's alleged "injury" is that his ability to practice law has been impeded because he will not represent clients whose cases would be heard in the courthouse and will not visit the office of any government official which is located in the courthouse. This alleged "injury" is neither actual nor imminent. *See Lujan,* —— U.S. at ——, —— – —— n. 2, 112 S.Ct. at 2136, 2138–39 n. 2. Stein does not allege that he has refused to represent any client because of the sign, nor has he identified any case which has required, or will require, his presence in the courthouse. Stein's practice is based in Chicago, and Stein does not have, and does not contemplate opening, an office within the County. At oral argument, Stein's counsel informed us that Stein has never been to the courthouse and has never seen the sign, but assured us that Stein knows where the courthouse is located.

As Stein's counsel acknowledged at oral argument, moreover, Stein's allegations could be made by any attorney licensed to practice law within the United States (not necessarily licensed within Illinois because an attorney can be admitted to practice *pro hac vice* within the County), subject only to the re-

---

Clause in elementary school settings 'present heightened concerns for courts,' " *Fleischfresser v. Directors of School Dist. 200,* 15 F.3d 680, 686 (7th Cir.1994) (citation omitted), nothing in the decisions cited above suggests that the constitutional requirements of standing are relaxed in these situations. The doctrine of standing, moreover, "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan,* —— U.S. at ——, 112 S.Ct. at 2136. Article III does not differentiate between "impressionable school children" and other classes of plaintiffs in establishing the judicial power of the United States.

The County also asserts that other decisions cited above, such as *County of Allegheny, Lynch,* and *American Jewish Congress,* are inapposite because the question of standing was never litigated. This argument ignores the fact that "[s]tanding is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Freedom From Religion Found., Inc. v. Zielke,* 845 F.2d 1463, 1467 (7th Cir.1988).

3. The County requests that we take judicial notice that all courtrooms and offices of the Fourth Judicial Circuit Court, and offices of the State's Attorney, have been moved to a new courthouse which opened in May, 1994. The County also requests that we take judicial notice that the Sheriff's Department has not been located in the old courthouse since 1990. The old courthouse, however, remains the seat of local government in the County and houses the offices of its elected officials. Doe and Roe will be exposed to the sign when they visit these offices, attend meetings of the County Board, or otherwise participate in their local government. The opening of the new courthouse therefore does not affect the standing of Doe and Roe.

4. The case-or-controversy requirement of Article III is satisfied if one plaintiff has standing to bring the suit. *See Watt v. Energy Action Educ. Found.,* 454 U.S. 151, 160, 102 S.Ct. 205, 212, 70 L.Ed.2d 309 (1981); *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 264 n. 9, 97 S.Ct. 555, 563 n. 9, 50 L.Ed.2d 450 (1977); *Buckley v. Valeo,* 424 U.S. 1, 12, 96 S.Ct. 612, 631, 46 L.Ed.2d 659 (1976). The dismissed claims of other plaintiffs may affect issues of damages or equitable relief when the lawsuit is reinstated. *Gonzales v. North Township of Lake County, Indiana,* 4 F.3d 1412, 1416 (7th Cir. 1993). The district court addressed Stein's allegations separately in its memorandum opinion granting the County's motion to dismiss, and both parties in their appellate briefs have addressed Stein's allegations independently from those of Doe and Roe. We therefore consider Stein's standing to bring this action without regard to the standing of Doe and Roe.

quirements of Federal Rule of Civil Procedure 11(b). Such an extensive concept of standing is untenable under *Lujan. See id.* at ——, 112 S.Ct. at 2136–40. The doctrine of standing "is not 'an ingenious academic exercise in the conceivable.'" *Id.* at ——, 112 S.Ct. at 2139 (citation omitted). Stein's allegations approach "pure speculation and fantasy." *Id.* at ——, 112 S.Ct. at 2140. He has no standing.

### III.

For the foregoing reasons, we REVERSE the district court's dismissal of the complaint of Doe and Roe against the County. We AFFIRM the district court's dismissal of Stein's complaint against the County. We express no opinion as to the merits of the plaintiffs' Establishment Clause claim. The case is REMANDED for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.