WILLIAMS, Circuit Judge,
concurring.
Although I ultimately agree that the plaintiffs in this case lack standing, I write separately to note some concerns I have with the majority’s reasoning and the uncertainty of the Supreme Court’s precedent in this area.
The majority looks to Elk Grove Unified School District v. Newdow, 542 U.S. 1, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) and relies on it for the proposition that a feeling of exclusion is not enough to confer Article III standing. If it were, the majority reasons, then Newdow would have had standing to challenge the words “under God” in the Pledge of Allegiance.
Newdow does not support the majority’s conclusion. The only standing-related issue before the Court in Newdow was whether Newdow had standing as a parent even though he lacked the right to litigate as his daughter’s “next friend.” Id. at 15, 124 S.Ct. 2301. The Court granted certiorari on two questions only: (1) whether Newdow had standing as a noncustodial parent to challenge the school district’s policy; and (2) if so, whether the policy offended the First Amendment. Id. at 10, 124 S.Ct. 2301. The Court concluded only that Newdow lacked prudential standing— not that he lacked Article III standing. Id. at 17-18,124 S.Ct. 2301. In fact, Chief Justice Rehnquist’s concurrence explicitly states, “To be clear, the Court does not dispute that respondent Newdow ... satisfies the requisites of Article III standing.” Id. at 20, 124 S.Ct. 2301 (Rehnquist, J., concurring).
The Supreme Court has cautioned against drawing conclusions based on jurisdictional issues that have not been decided. See Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 119, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). I do not agree that Newdow supports the proposition that the plaintiffs here do not have Article III standing because the Court could have, but did not, consider whether Newdow had standing separate and apart from his status as a parent. In fact, in footnote 8 of the Court’s opinion, the Court went so far as to assume that Newdow could satisfy Article III standing on his own:
Newdow’s complaint and brief cite several additional bases for standing: that Newdow “at times has himself attended — and will in the future attend — class with his daughter;” that he “has considered teaching elementary school students in [the School District];” that he has “attended and will continue to attend” school board meetings at which the Pledge is “routinely recited,” and that the School District uses his tax dollars to implement its Pledge policy. Even if these arguments suffice to establish Article III standing, they do not respond to our prudential standing concerns ....
Newdow, 542 U.S. at 18 n. 8, 124 S.Ct. 2301 (emphasis added). Newdow did not argue that he was required to recite the Pledge himself, as the majority suggests would have been necessary for him to have standing. Rather, he alleged that he would attend the classroom and board meetings where the Pledge was recited, and would therefore be directly exposed to the government’s unwelcome religious message. See id. The Court was willing to assume that these allegations would have sufficed to confer Article III standing. See id.
Nor, as the majority suggests, must the plaintiffs alter their behavior in order to have a cognizable injury. In Doe v. County of Montgomery, 41 F.3d 1156, 1161-62 *811 (7th Cir.1994), we held that whether a plaintiff has altered his behavior is not controlling. We stated that a plaintiff can also satisfy the standing requirement by establishing that he is subject to direct and unwelcome exposure to religious messages. Id. The majority calls into question our precedent in Books v. City of Elkhart, 235 F.3d 292, 299-301 (7th Cir.2000) (hereinafter “Books I”), and Books v. Elkhart County, 401 F.3d 857, 861-62 (7th Cir. 2005) (hereinafter “Books II ”), which reaffirmed the principle that a plaintiff need not allege a change in behavior to have standing, because those cases were decided before Newdow or did not mention Newdow. But Newdow would not have changed the analyses because it did not address Article III standing.
I also do not see a need to call into question those cases on the grounds that they did not address Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) or attempt to reconcile their holdings with Freedom From Religion Foundation, Inc. v. Zielke, 845 F.2d 1463 (7th Cir.1988). Books I and Books II both rely heavily on Doe, which addressed both Valley Forge and Zielke. Doe harmonized the holding that an allegation of direct exposure to unwelcome religious conduct satisfies the injury-in-fact requirement with Zielke’s holding that the plaintiffs in that case did not have standing to object to a Ten Commandments display in a park. Doe, 41 F.3d at 1161. In Doe, we explained that the plaintiffs in Zielke did not alter their behavior “and [they] failed to demonstrate that they were exposed to the monument during their normal routines or in the course of their usual driving or walking routes.” Doe, 41 F.3d at 1161.
The rule in every other circuit that has considered the question is that while an allegation of a change in behavior is sufficient to confer standing, it is not required. Suhre v. Haywood County, 131 F.3d 1083, 1087-88 (4th Cir.1997) (plaintiff need not allege a change in behavior to challenge religious display); Am. Civil Liberties Union of Ky. v. Grayson County, 591 F.3d 837, 843 (6th Cir.2010) (standing satisfied by allegations of direct and unwelcome contact with government-sponsored religious object); Vasquez v. Los Angeles County, 487 F.3d 1246, 1251-52 (9th Cir. 2007) (psychological harm resulting from direct contact with religious symbol is sufficient to confer standing and a change in behavior is not required); Foremaster v. City of St. George, 882 F.2d 1485, 1490-91 (10th Cir.1989) (no change in behavior required to challenge religious display); Saladin v. City of Milledgeville, 812 F.2d 687, 692-93 (11th Cir.1987) (same). I see no need to diverge from this rule.
Notwithstanding my concerns with the majority’s reasoning, and my belief that this is a close case, I agree that ultimately the plaintiffs do not have standing. In Valley Forge, the Supreme Court held that a “psychological consequence” does not suffice as concrete harm when it is produced merely by “observation of conduct with which one disagrees.” 454 U.S. at 485-86, 102 S.Ct. 752. The plaintiffs in that case complained that the government had conveyed surplus property to a religious college for free in violation of the Establishment Clause. Id. at 486-87, 102 S.Ct. 752. The Court found that the plaintiffs did not have standing, but it also reiterated that, “[i]n reaching this conclusion, we do not retreat from our earlier holdings that standing may be predicated on noneconomic injury.” Id. at 486, 102 S.Ct. 752.
The Court simply has not been clear as to what distinguishes the psychological injury produced by conduct with which one *812 disagrees from an injury that suffices to give rise to an injury-in-fact in Establishment Clause cases. As the Ninth Circuit recently noted, the Court has decided cases in many contexts where the plaintiffs claimed that they were hurt by exposure to unwelcome religious messages from the government, including cases involving a creche in a county courthouse, a creche in a public park, the Ten Commandments displayed on the grounds of a state capítol, the Ten Commandments displayed at a courthouse, a cross displayed in a national park, prayer in a football game, school prayer, a moment of silence at school, Bible reading at a public school, and a religious invocation at graduation. Catholic League for Religious and Civil Rights v. City of San Francisco, 624 F.3d 1043, 1049-50 (9th Cir.2010) (citing Supreme Court cases). In all of those cases, the Court treated standing as sufficient, even though it appears that nothing was affected but the religious or irreligious sentiments of the plaintiffs. Id. “To ignore the import of those cases for the standing analysis, one would have to believe the Supreme Court repeatedly overlooked a major standing problem and decided a plethora of highly controversial cases unnecessarily and inappropriately.” Newdow v. Roberts, 603 F.3d 1002, 1014 (D.C.Cir. 2010) (Kavanaugh, J., concurring). Yet, as recently as last week, the Court stated in Arizona Christian School Tuition Organization v. Winn that even though it had decided a number of Establishment Clause cases on the merits that appeared to be in tension with its decision to find no standing in the case before it, those cases were not dispositive because they did not address the threshold standing question. Ariz. Christian Sch. Tuition Org. (2011).
The plaintiffs in this case allege that they feel “excluded” when the President issues a proclamation to commemorate the National Day of Prayer, which pursuant to § 119 directs the President to proclaim that people “may” turn to God in prayer. The plaintiffs state that they learned about the National Day of Prayer through the media, through their friends, and by visiting the White House website. Although the reach of Valley Forge is unclear and a plaintiff need not change his or her behavior to have standing, the plaintiffs’ allegations here seem to amount to nothing more than “the observation of conduct with which [they] disagree,” which Valley Forge held was insufficient to confer standing. At bottom, the plaintiffs’ allegations are too attenuated to confer standing. I therefore concur that the plaintiffs do not have standing and therefore do not reach whether § 119 violates the Establishment Clause.